## U.S. BANKRUPTCY COURT
### District of South Carolina

Case Number:  **11-03972-dd**

## ORDER ON MOTION TO AVOID JUDICIAL LIEN AND MOTION TO DISMISS

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**10/19/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 10/20/2011

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

IN RE:

Sharon Sheppard Lloyd,

Debtor.

C/A No. 11-03972-DD

Chapter 7

**ORDER ON MOTION TO AVOID**
**JUDICIAL LIEN AND MOTION TO**
**DISMISS**

This matter is before the Court on a Motion to Avoid Judicial Lien ("Avoidance Motion")

filed by Sharon Sheppard Lloyd ("Debtor") on July 5, 2011 and a Motion to Dismiss ("Dismissal

Motion") filed by ServiceMaster of Charleston ("ServiceMaster") on August 15, 2011.

ServiceMaster filed a Response to Debtor's Avoidance Motion on August 3, 2011, and Debtor

replied on August 11, 2011.  A hearing was held on both Motions on September 20, 2011.  At

the conclusion of the hearing, the Court took the matter under advisement.  After further

consideration of the issues, the Court now makes the following Findings of Fact and Conclusions

of Law.

**FINDINGS OF FACT**

1.  Debtor owns a home which is encumbered by a mortgage.  At all times relevant, Debtor

    maintained a homeowners insurance policy on the property.

2.  In April 2009, Debtor's home was severely damaged by a kitchen grease fire.  After the

    fire, Debtor's insurance company, at the request of Debtor, contacted ServiceMaster to

    perform repairs.

3.  In May 2009, Debtor hired ServiceMaster to perform cleaning and restoration services on

    her home.

4.  Debtor signed ServiceMaster's form contract and agreed to pay ServiceMaster for its services, subject to a further "price agreement" with Universal Insurance, Debtor's insurance company. Debtor specifically and in writing authorized Universal Insurance to make direct payment to ServiceMaster or to issue a joint check in Debtor's and ServiceMaster's names.    ServiceMaster's representative testified that insurance companies often disregard this authorization and instead pay the homeowner directly.

5.  Debtor owed a total debt to ServiceMaster in the amount of $49,805.09 for the work ServiceMaster performed. Debtor timely repaid $45,043.61 of that debt. The remaining portion of the debt, in the amount of $4,761.48, remains outstanding and is the subject of Debtor's Motion to Avoid Judicial Lien and ServiceMaster's Motion to Dismiss.

6.  Debtor received a series of checks from her insurance company.  The checks were to reimburse Debtor for her losses and included not only payment for services performed by ServiceMaster but also payment for other losses covered by Debtor's insurance policy, including personal property lost in the fire and living expenses for the period during which Debtor was displaced.

7.  One check introduced into evidence was jointly issued to Debtor and her mortgage company.  Debtor signed and deposited the check without an endorsement from her mortgage company.  The check was in the approximate amount of the balance due to ServiceMaster.  Debtor used that check to purchase mattresses, box springs, draperies, and other household goods.

8.  ServiceMaster filed suit and obtained a judgment for $4,841.54 against Debtor in the Dorchester County Magistrate's Court on January 11, 2011. ServiceMaster's sole cause of action was for breach of contract.

9.  Subsequent to obtaining a judgment against Debtor, ServiceMaster attempted to execute
    on the judgment.  The execution was returned nulla bona.

10. Debtor filed her chapter 7 bankruptcy on June 24, 2011.  Debtor conceded at the hearing
    on the Motions that one of her primary reasons for filing bankruptcy was ServiceMaster's
    judgment.

## CONCLUSIONS OF LAW

### I.    Motion to Dismiss

ServiceMaster seeks to dismiss Debtor's bankruptcy case for bad faith, pursuant to 11

U.S.C. § 707(a).  Section 707(a) provides that a court may dismiss a debtor's case "for cause."

Bad faith is not expressly included in section 707(a)'s list of situations which constitute cause for

dismissal.  However, courts have often held that lack of good faith in filing a bankruptcy petition

is cause for purposes of section 707(a).  *In re Dudley*, 405 B.R. 790, 800 (Bankr. W.D. Va. 2009)

(citing *Perlin v. Hitachi Capital Am. Corp. (In re Perlin),* 497 F.2d 364, 369 (3d Cir. 2007)); *In*

*re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008) (citing *McDow v. Smith*, 295 B.R. 69

(E.D. Va. 2003); *In re Zick*, 931 F.2d 1124, 1126–27 (6th Cir. 1991)).  The court has discretion

in determining whether to dismiss a debtor's case pursuant to section 707(a).  *Dudley*, 405 B.R.

at 800.  When making this decision, the bankruptcy court should consider the totality of the

circumstances.  *McDow v. Smith*, 295 B.R. 69, 75 (E.D. Va. 2003).

In this case, ServiceMaster argues that a number of factors indicate that Debtor's case

was filed in bad faith, including the fact that ServiceMaster is Debtor's largest unsecured creditor

and was the only creditor actively attempting to collect from Debtor at the time of filing, and the

fact that Debtor was meeting all of her living expenses and was current in payments to her other

creditors at the time of filing.  ServiceMaster supports its request for dismissal with a Third

Circuit case which set forth several factors that indicate when a case is appropriate for dismissal based on bad faith. *See Perlin v. Hitachi Capital Am. Corp. (In re Perlin)*, 497 F.3d 364 (3d Cir. 2007). That case also discusses a previous Third Circuit case addressing bad faith dismissal under section 707(a) and states, "[In that case,] we cautioned that dismissal should be 'confined carefully' and utilized only in 'egregious cases that entail concealed or misrepresented assets and/or sources of income, lavish lifestyles, and intention to avoid a large single debt based upon conduct akin to fraud, misconduct, or gross negligence." *Perlin*, 497 F.3d at 373 (citing *In re Tamecki*, 229 F.3d 205, 208 (3d Cir. 2000)). Debtor's case is not such a case.

Debtor and ServiceMaster testified that Debtor owed a total debt of approximately $49,805.09 to ServiceMaster. Both Debtor and ServiceMaster testified that Debtor timely paid ServiceMaster approximately $45,043.61 of the total debt. Both parties further testified that the only portion of the debt outstanding is in the amount of $4,761.48. Additionally, Debtor testified that she did not intend to defraud ServiceMaster and that the only reason she did not turn over the final insurance check was due to a misunderstanding stemming from conversations with her insurance company. Debtor testified that no summary was included with the check to show the purpose of the check and that she previously was informed by her insurance company she would receive additional insurance proceeds for the replacement of her household items. Debtor testified that upon receipt of the check, she believed, based on representations from her insurance company, that the check was intended for replacement of her personal items and that an additional insurance check would arrive for the satisfaction of any remaining debt with ServiceMaster. Additionally, ServiceMaster's representative admitted during his testimony that confusion often ensues when the insurance company sends insurance proceeds directly to the policy holder rather than to the contractor.

Debtor's expenses are not extravagant.  Debtor conceded that her bankruptcy case was

filed partly to deal with ServiceMaster's lien, but also to deal with her other debt, including a car

which is titled in Debtor and her daughters' names.  Debtor testified that at the time of filing the

payments on that vehicle were not current and that she did not want her daughter to lose her

primary mode of transportation. This is not an egregious case, nor does Debtor's conduct toward

ServiceMaster, to whom the large majority of the debt owed was repaid, suggest fraud. The

totality of Debtor's circumstances indicates that Debtor's filing was not in bad faith and should

not be dismissed.

### II.      Motion to Avoid Judicial Lien

Debtor filed her Avoidance Motion under section 522(f), which allows a debtor to avoid

a judicial lien on property if the lien impairs the debtor's exemption.  Section 522(f)(2)(A)

provides a formula for calculating a judicial lien's avoidability, stating:

> For the purposes of this subsection, a lien shall be considered to impair an
> exemption to the extent that the sum of –
> (i)      the lien;
> (ii)      all other liens on the property; and
> (iii)      the amount of the exemption that the debtor could claim if there were no
>       liens on the property;
> exceeds the value that the debtor's interest in the property would have in the
> absence of any liens.

Debtor's Schedules indicate that the value of her home is $120,000, based on her opinion

of the home's value.  The value of the property for tax assessment purposes is $111,320.  There

is a mortgage on the home securing a debt of $97,655.00, and Debtor has claimed an exemption

in the property in the amount of $48,025.  Debtor's Avoidance Motion states that the amount of

ServiceMaster's lien is $4,841.54.  At the hearing, ServiceMaster indicated that the debt secured

by its judgment lien is now over $5,000.  Regardless of the exact amount of the lien, utilizing the

formula set forth in section 522(f)(2)(A), it appears that the entire amount of ServiceMaster's

judicial lien is avoidable.

ServiceMaster argues, however, that it has an equitable lien on Debtor's residence which

is not subject to avoidance. ServiceMaster claims that all the requirements for an equitable lien

are present and relies on *In re Carpenter*, 245 B.R. 39 (Bankr. E.D. Va. 2000) for the proposition

that an equitable lien is not subject to avoidance under section 522. Debtor responds that

ServiceMaster does not have an equitable lien because it chose its remedy when it pursued a

money judgment against Debtor. Debtor argues that ServiceMaster is not entitled to a further

remedy against her. Debtor also contends that the elements for establishing an equitable lien are

not met.

In South Carolina, for an equitable lien to arise, three requirements must be satisfied: (1)

a debt owed from one person to another, (2) specific property to which the debt attaches, and (3)

express or implied intent for the property to serve as security for payment of the debt. *In re*

*Houston*, 409 B.R. 799, 811 (Bankr. D.S.C. 2009) (citing *First Fed. Sav. & Loan Ass'n v. Bailey*,

316 S.C. 350, 450 S.E.2d 77, 80–81 (Ct. App. 1994)). An equitable lien is not recognized until a

judgment is entered finding the existence of an equitable lien. *Id.* (citing *First Fed. Sav. & Loan*

*Ass'n v. Bailey*, 316 S.C. 350, 450 S.E.2d 77, 81 (Ct. App. 1994)). If there is such a finding, the

equitable lien will relate back to the time when the parties created it. *Id.* (citing *First Fed.*, 450

S.E.2d at 81).

ServiceMaster does not have a judgment recognizing an equitable lien. ServiceMaster

sought and obtained its chosen remedy in the form of a liquidated money judgment against

Debtor. ServiceMaster requests that the Court now enter a judgment that it has an equitable lien

on Debtor's property.  However, ServiceMaster has not proven all of the elements necessary to

establish an equitable lien and therefore is not entitled to such a finding.

Debtor does not dispute that she owes a debt to ServiceMaster; therefore the first

requirement set forth above is satisfied.  However, the Court finds that the second requirement

has not been established by ServiceMaster, who has the burden of showing that it is entitled to an

equitable lien.  ServiceMaster alleges that it had an interest in the check received by Debtor, and

since it was used on Debtor's home, ServiceMaster argues that it has a lien on Debtor's home

and personal property.  ServiceMaster did not present evidence that the check retained by Debtor

was intended to complete payment to ServiceMaster.  No evidence was presented regarding the

previous checks received by Debtor.  Additionally, ServiceMaster did not establish that the

check at issue was for the exact amount still due and owing.  Debtor testified that no summary or

explanation was included with the check she received and that she was confused about the

purpose of the check.  She testified that she had received other checks for losses sustained in the

fire that did not relate to the services performed by ServiceMaster. ServiceMaster did not show

that the check at issue was traceable to the debt owed to it.  The second element required to

establish an equitable lien has not been met.

The third requirement is also not satisfied.  ServiceMaster's form contract, which was

signed by Debtor, does not create any kind of security agreement but simply authorizes Debtor's

insurance company to make direct payment to ServiceMaster.  Certainly, Debtor did not intend

that the items of personal property she subsequently purchased with the check would serve as

security for her debt to ServiceMaster.  Her agreement with ServiceMaster does not explicitly

state that the home, personal property, or the insurance proceeds will serve as security for the

debt due under the agreement.  Additionally, no implied intent arises as to the specific funds

represented by the check at issue, as it is not clear that the check related to the work performed

by ServiceMaster.   Intent for the property to serve as security for the payment of Debtor's

obligation to ServiceMaster has not been established and therefore, the third element for

establishing an equitable lien is not met.

Finally, South Carolina courts have stated that a breach of contract, without more, does

not create an equitable lien.  *Carolina Attractions, Inc. v. Courtney*, 287 S.C. 140, 145, 337

S.E.2d 244, 247 (Ct. App. 1985) (citing multiple authorities for the proposition that a breach of

contract is not sufficient to create an equitable lien).  ServiceMaster's sole cause of action in its

magistrate court action was breach of contract, and it appears that a breach of contract by Debtor,

and nothing more, is involved here.  Because the requirements to establish an equitable lien are

not met, ServiceMaster is not entitled to an equitable lien.  ServiceMaster's judicial lien is

avoidable.

## CONCLUSION

For the reasons set forth above, ServiceMaster's Dismissal Motion is denied.  Debtor's

Avoidance Motion is granted.  The entire amount of ServiceMaster's judicial lien is avoided.

AND IT IS SO ORDERED.